# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY SPODEN, #Y15676, *also known as* NINA SPODEN, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 18-cv-0949-NJR |
| JEFFERY M. DENNISON, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Anthony Spoden[1] filed this civil rights action pursuant to 42 U.S.C. § 1983, in order to address numerous violations of her constitutional rights at Shawnee Correctional Center ("Shawnee"). (Doc. 1). This Court screened the Complaint and determined that several of Plaintiff's claims were improperly joined in this action. (Doc. 8). Therefore, the Court entered an Order severing the claims into four additional cases. *See Spoden v. Phelps*, No. 18-cv-01401-SMY (S.D. Ill.); *Spoden v. Lynn*, No. 18-cv-01402-NJR (S.D. Ill.); *Spoden v. Smith*, No. 18-cv-01403-SMY (S.D. Ill.); *Spoden v. Kasey*, No. 18-cv-01404-MJR (S.D. Ill.).

The only claims that remain in this action are Count 2 against Warden Dennison for mishandling Plaintiff's grievances and Count 3 against Warden Dennison for failing to adopt policies and practices aimed at ensuring the safety and care of transgender inmates at Shawnee. (Doc. 8, p. 18). These claims are now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

---

[1] Plaintiff's legal name is Anthony Spoden. However, Plaintiff is a transgender inmate who prefers to be called Nina Cole. (Doc. 1, pp. 2, 13). Although the Court must use Plaintiff's legal name, feminine pronouns will be used in reference to Plaintiff.

1

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Complaint

In the Complaint, Plaintiff alleges that Warden Dennison mishandled several grievances that she filed to complain about "all issues mentioned in this complaint." (Doc. 1, p. 38). The Complaint addresses a broad range of issues. (Doc. 1). The Court identified nineteen separate claims against various groups of defendants. (Doc. 8, pp. 11-12). With two exceptions, Plaintiff offers no insight into the grievances that Warden Dennison allegedly mishandled or the complaints he ignored. (Doc. 1, pp. 1-39). The two exceptions are described below.

First, the Court located a set of grievances and appeals that Plaintiff filed to complain about the mistreatment of transgender inmates at Shawnee. (Doc. 1, pp. 42-51). Several grievances are illegible. *Id*. However, Warden Dennison responded to one that is legible. (Doc. 1, p. 46). Plaintiff filed a grievance regarding "staff conduct" on October 31, 2017. *Id*. In the grievance, Plaintiff complained about Counselor Lynn's practice of allowing inmate peer educators to spread negative or false information about the lesbian, gay, bisexual, and transgender ("LGBT") inmate population during orientation. *Id*. Plaintiff complained that the peer educators announced the names of past inmates who tested positive for HIV and suggested that all LGBT inmates at the prison have HIV. (Doc. 1, pp. 18-19). The grievance was denied because "[o]ffenders have been certified as peer educators[, and] [t]he material presented in Orientation is provided by Office of Health Services." (Doc. 1, p. 46). Warden Dennison concurred with the decision on December 15, 2017. (Doc. 1, pp. 46, 51).

Second, Plaintiff describes a meeting with Warden Dennison to discuss prison policies about makeup and her own mistreatment on October 6, 2017. (Doc. 1, p. 8). On that date, she met with Warden Dennison and Mental Health Supervisor Katherine Hammersley to discuss a disciplinary ticket she received after challenging an officer's orders to wipe makeup from her face. (Doc. 1, p. 8). Plaintiff pointed out that her punishment with a week of segregation and a month of lost privileges was "extreme" for this expression of her gender identity because the inmate manual did not forbid the practice. *Id*. Plaintiff asked the warden to restore her A-grade status and commissary privileges. *Id*. At the time, she had already served a week in segregation. *Id*. Warden Dennison granted her request. *Id*. Although she alludes to other instances of alleged

mistreatment arising from her transgender status,[2] Plaintiff does not name Warden Dennison in connection with them.

## Claims

The Court previously characterized the two claims against Warden Dennison in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), as follows:

**Count 2 -** Fourteenth Amendment due process claim against Defendant Dennison for mishandling Plaintiff's grievances regarding the conditions of her confinement or various prison officials, by ignoring, denying, delaying, or disposing of the grievances.

**Count 3 –** Eighth and/or Fourteenth Amendment claims against Defendant Dennison for failing to establish policies and procedures necessary to ensure the safety and care of transgender inmates at Shawnee.

The parties and Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

## Discussion

Plaintiff's claim in Count 2 against Warden Dennison for mishandling her grievances does not survive threshold review. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. Therefore, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Accordingly, Count 2 shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

---

[2] For example, Count 4 involved a claim of inadequate mental health treatment and medical care for Plaintiff's gender dysphoria. (Doc. 1, pp. 36-37; Doc. 8, p. 11). However, Plaintiff failed to name a defendant in connection with it, and the claim was dismissed. (Doc. 8, p. 16).

4

Plaintiff's claim in Count 3 against the warden for failing to implement policies aimed at protecting and caring for transgender inmates also does not survive preliminary review. She brings this claim under the Eighth Amendment, which protects prisoners from cruel and unusual punishment, and the Fourteenth Amendment, which guarantees equal protection of the law. Plaintiff alleges that the warden failed to adopt policies to protect transgender inmates including her, but she does not develop the claim against the warden.

All Eighth Amendment claims have an objective and a subjective component. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994). The objective component requires a plaintiff to demonstrate that she faced a sufficiently serious deprivation of the minimal civilized measure of life's necessities, which include safe living conditions and adequate medical care. *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (citing *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component requires a plaintiff to demonstrate that each defendant acted with the requisite state of mind, which is deliberate indifference. *Id. See also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). The absence of a policy or a policy of inaction can rise to the level of deliberate indifference. *See, e.g., Mitchell v. Kallas*, -- F.3d --, 2018 WL 3359113 (7th Cir. July 10, 2018) (leaving serious medical condition, like gender dysphoria, untreated as a blanket rule can amount to deliberate indifference).

The Fourteenth Amendment Equal Protection Clause protects individuals from government discrimination. *Swanson v. City of Chetek*, 719 F.3d 780, 783-84 (7th Cir. 2013). Typical claims involve discrimination based on race, national origin, or sex. *Id*. at 783-84. To establish a prima facie case of discrimination under the Equal Protection Clause, a plaintiff must show that she "is a member of a protected class," that she "is otherwise similarly situated to

5

members of the unprotected class," and that she "was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501 (7th Cir. 1993) (citing *McMillian v. Svetanoff*, 878 F.2d 186, 189 (7th Cir. 1989)). The Clause also prohibits the singling out of an individual for different treatment for no rational reason. *Swanson*, 719 F.3d at 783-84. Such claims have been referred to as "class-of-one" equal protection claims and require an individual to show that she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

Here, Plaintiff sets forth no allegations which support a claim under any of these theories. Her claims hinge on the absence of policies aimed at protecting transgender inmates. Unfortunately, however, she fails to indicate what policies are absent or explain how the warden's failure to implement those policies caused violations of her Eighth and Fourteenth Amendment rights. The two examples Plaintiff offers in the Complaint simply do not suggest that the warden's policies, or lack thereof, caused the violation of her constitutional rights.

Plaintiff complains of one instance in which the warden approved the decision to deny her grievance against Counselor Lynn for allowing peer educators to share information about the HIV status of inmates at orientation. (Doc. 1, p. 46). The grievance was denied because Counselor Lynn had no involvement in the dissemination of this information. *Id*. The Office of Health Services trained the peer educators and provided them with information to share. *Id*. In the grievance, Plaintiff failed to explain the connection between the misconduct of the peer educators and Counselor Lynn—not to mention Warden Dennison. *Id*. The warden's signature on the Grievance Officer's Response reflects this lack of connection, not a conscious decision to ignore the needs of transgender inmates and their safety. *Id*.

Plaintiff also complains of a second instance, in which disciplinary action was taken against her after she challenged an officer's order to wipe off her makeup. (Doc. 1, pp. 7-8). Plaintiff was given a disciplinary ticket for an undisclosed rule violation, admitted to being "smart assed," pleaded guilty to the violation, and was punished with a week of segregation and a month of lost privileges. *Id*. At the time, the inmate manual did not address inmate makeup. *Id*. It is unclear, however, whether Plaintiff was even punished for wearing makeup or instead for talking back to the officer. *Id*. The Complaint does not say. *Id*. Regardless, Plaintiff told the warden that she considered the punishment "extreme" because the inmate manual did not prohibit inmates from wearing makeup. *Id*. The warden agreed with this statement and restored her A-grade status and commissary privileges.[3] *Id*. Plaintiff complains of no other safety or security issues posed by prison policies (or a lack thereof) regarding inmate makeup. (Doc. 1).

Count 3 does not survive preliminary review against Warden Dennison, and the claim shall be dismissed. But Plaintiff will have an opportunity to re-plead the claim by filing an amended complaint. If she chooses to do so, Plaintiff must comply with the instructions and deadline set forth in the below disposition.

**Pending Motion**

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice. A district court faced with a request for counsel must ask two questions: "(1) [H]as the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *See Armstrong v. Krupiczowicz*, 874 F.3d 1004, 1008 (7th Cir. 2017) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). In her Motion, Plaintiff did not demonstrate sufficient efforts to locate counsel on her own before seeking this Court's help. She states that she "wrote

---

[3] At the time of her request, Plaintiff had already served time in segregation.

several [a]ttorney's" and has not received any responses yet. (Doc. 3, p. 1). She did not attach copies of her letters to these attorneys, so the Court is unable to fully assess whether she waited a sufficiently long time to request help. In addition, Plaintiff demonstrates an ability to litigate this matter without the assistance of counsel, given that she has "some college," filed coherent pleadings, tracked the progress of her case and deadlines, and identified no other barriers to self-representation, such as educational, language, mental health, or medical issues. (Doc. 1, p. 2).

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 2** is **DISMISSED** with prejudice and **COUNT 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that, should she wish to proceed with this case, Plaintiff must file her First Amended Complaint on or before **August 15, 2018**. She must list this case number (No. 18-cv-0949-NJR) on the first page of the pleading and identify the document as the "First Amended Complaint." Plaintiff must state any facts which may exist to support her claim in Count 2 against Warden Dennison for failing to ensure the adequate care and protection of transgender inmates, including Plaintiff, at Shawnee. Plaintiff is cautioned that in order to state a viable claim, she must demonstrate that Warden Dennison's action or inaction resulted in the violation of her constitutional rights. Further, if Plaintiff includes any unrelated claims against different defendants in the First Amended Complaint, the Court will sever those claims into new cases and assess an additional filing fee in each newly-severed case.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint.

Thus, the First Amended Complaint must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Failure to file an amended complaint shall result in the dismissal of this action with prejudice. Such dismissal shall count as another "strike" under 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing her amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **ADVISED** that she is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in her address; the Court will not independently investigate her whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 17, 2018**

                                                                                                     *Nancy J. Rosenstengel*
                                                                                    _____
                                                                                    **NANCY J. ROSENSTENGEL**
                                                                                    **United States District Judge**